UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VANESSA MILLER,          Case No. 1:12-cv-16

    Plaintiff,          Beckwith, J.
                                             Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Vanessa Miller filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. See 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents several claims of error for this Court's review. As explained below, although the issue is close, the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff was found to be disabled for a period of time between February 1, 2000 and January 7, 2005, when she was found no longer to be disabled. Plaintiff challenged the determination that she was no longer disabled, but it was upheld after an evidentiary hearing conducted on October 26, 2007. (Tr. 16).

In 2008, Plaintiff filed a new application for Supplemental Security Income ("SSI"), alleging disability beginning in 2005 due to a combination of mental and

physical impairments. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing de novo before an Administrative Law Judge ("ALJ"). On August 31, 2010, an evidentiary hearing was begun before ALJ Samuel A. Rodner – the same ALJ who had conducted the 2007 hearing. Plaintiff appeared with counsel and provided limited testimony. (Tr. 33-46). The hearing was continued to November 16, 2010, at which time a medical expert ("ME"), a vocational expert ("VE"), and Plaintiff provided additional testimony. (Tr. 48-79). On December 16, 2010, the ALJ denied Plaintiff's application in a written decision. (Tr. 13-31).

The record reflects that Plaintiff was 51 years old on the date she filed her application for benefits, and completed high school and some college coursework. Plaintiff has past relevant work as a sales clerk, but there is no dispute that she can no longer perform that work. (Tr. 24).

The ALJ found that Plaintiff had the following severe impairments: "history of thymoma, status post surgery and radiation with no recurrence; active immune thrombocytopenic purpura (ITP) requiring weekly N-plate injections; anemia; chronic chest pain, etiology unclear, but probably secondary to scar tissue from her surgery and radiation; depression; estimated borderline intellectual functioning; and headaches." (Tr. 18). However, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. (Tr. 19). Instead, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a range of light work, as further restricted by the following:

> She can lift/carry/push/pull twenty pounds occasionally or ten pounds frequently. She can stand/walk about six hours in an eight-hour workday.

> She can sit with normal breaks for a total of about six hours in an eight-hour workday. She can never climb ladders, ropes, or scaffolds. She can occasionally crawl, crouch, kneel, balance, or climb ramps or stairs. She can frequently stoop. She should avoid concentrated exposure to unprotected heights and hazardous machinery. She is limited to routine, static, predictable work that does not require strict production quotas or fast-paced performance. She should also work at least six feet away from others, in order to reduce distractions, no assembly line type of work, and no rapid pace.

(Tr. 20).

Based upon the testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was able to perform "jobs that exist in significant numbers in the national economy," such that she was not under a disability, as defined in the Social Security Regulations. (Tr. 24-25).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by failing to give the opinion of a treating physician "controlling weight," and instead by relying upon the RFC opinions of a consulting physician. In additional arguments,[1] Plaintiff contends that the ALJ erred by failing to recognize that her weekly medical appointments preclude her from full-time work, based both on the side effects of treatment, and on the frequency of treatment. Plaintiff also argues that the ALJ erred by failing to find that Miller satisfied the Listing for chronic anemia, and that the ALJ should have found her to be disabled based upon her pain level. As discussed below, while most of the asserted errors are without merit, one error requires remand for further fact-finding.

---

[1] Plaintiff's Statement of Errors most clearly articulates only one error pertaining to application of the treating physician rule, delineated by a single caption in bold. However, within the body of her Statement, Plaintiff discusses the additional errors identified by this Court.

3

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. See 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Statement of Errors

Plaintiff argues in this appeal that the ALJ erred by failing to conclude that her physical impairments were disabling; she does not challenge the ALJ's analysis of her mental impairments. Plaintiff's assertions of error both relate to the third, fourth, and fifth steps of the sequential analysis. For the convenience of this Court, the undersigned addresses Plaintiff's claims in a slightly different order than presented by Plaintiff.

### 1. Step 3 Analysis – Whether Plaintiff Met or Equaled a Listed Impairment

In one claim, Plaintiff argues that the ALJ erred by failing to find that Plaintiff met or equaled a Listed Impairment at Step 3 of the sequential analysis, based upon her chronic anemia. Plaintiff asserts that not only did the ALJ err by failing to find her

anemia severe enough to equal a Listed Impairment, but argues that the "ALJ's finding that Miller was not anemic is …in contrast to the evidence in the record." (Doc. 10 at 5).

Plaintiff's suggestion that the ALJ did not find her anemia to be a severe impairment is flatly contradicted by the record; anemia is clearly listed by the ALJ as one of multiple severe impairments. (Tr. 18). Moreover, the ALJ specifically discussed the Listing for anemia under Step 3, but found that Plaintiff did not meet or equal the Listing since it requires either the need for regular blood transfusions, or a resulting impairment in another body system due to anemia. (*See* Tr. 19, citing 20 C.F.R. Part 404, Sbpt. P, Appx. 1, §7.02).

On appeal, Plaintiff argues that she "equaled" the Listing for anemia because she receives "the equivalent of blood transfusions in the form of N-Plate injections" on a weekly basis. (Doc. 10 at 5). However, Plaintiff offers no legal authority to support her argument that her N-Plate injections, provided by her oncologist as treatment for a different condition, ITP, should somehow be considered to determine medical equivalence for an entirely unrelated Listing condition. From a medical standpoint, there is no evidence that the N-Plate injections have any impact on her hemoglobin levels or anemia.

Anemia is a relatively common condition that is rarely disabling. In this case, the Listing provides specific criteria that Plaintiff clearly did not satisfy. Plaintiff's treating physician never opined that Plaintiff's anemia was so severe that it met or equaled the Listing level. To the contrary, Dr. Winkelmann's notes frequently describe Plaintiff's anemia as "borderline," "mild," and at worst, "moderate." (Tr. 578, 617, 981, 1171, 1181, 1196, 1198-1200, 1206). In fact, in written statements evaluating Plaintiff's

anemia, Dr. Winkelmann opines that Plaintiff suffers from "[c]hronic anemia which is *mild at the present time, so she is on no treatment for it.*" (Tr. 553, 981, emphasis added).

In contrast to Dr. Winkelmann, the ME testified at the hearing that Plaintiff's anemia fell within the "moderate" range (Tr. 62). Notwithstanding that testimony, Defendant accurately points out that Plaintiff's hemoglobin lab results were often in the normal range. Having reviewed the medical evidence, the undersigned concludes that the ALJ's determination at Step 3, that Plaintiff's anemia did not meet or equal the Listing level, is well-supported by substantial evidence in the record as a whole. *See Hale v. Sec'y of Health and Human Servs.,* 816 F.2d 1078 (6th Cir. 1987)(affirming where plaintiff did not show each element of listing); *see also Hutchinson v. Comm'r of Soc. Sec.,* 188 F.3d 507 (6th Cir. 1999)(Table, text available on Westlaw, holding that the plaintiff bears the burden to show that he or she meets or equals a Listed impairment).

### 2. Residual Functional Capacity Analysis

The remainder of Plaintiff's claims relate to the ALJ's determination of Plaintiff's RFC at Steps 4 and 5 of the analysis, and his conclusion that Plaintiff retains the ability to work full-time in jobs that exist in significant numbers in the national economy. With one exception, Plaintiff's claims of errors are without merit.

#### a. Weighing Medical Evidence of Treating/Consulting Physicians

Plaintiff's primary argument is that the ALJ failed to give the opinion of Dr. John Winkelmann, Plaintiff's treating physician, "controlling weight." As discussed below, however, it is not entirely clear what opinion that Plaintiff believes the ALJ ignored.

In general, social security regulations require the opinions of treating physicians to be given the greatest weight, with the opinions of consulting physicians who have actually examined the plaintiff to be given more weight than those of non-examining consultants. See 20 C.F.R. §404.1527(c)(1) and (c)(2); see also *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Of course, not every opinion uttered by a treating physician is entitled to the same weight. For example, the determination of a claimant's RFC, like the determination of disability, is "reserved to the Commissioner." 20 C.F.R. §404.1527(d).

In addition, despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). However, when the treating physician's opinion is not given controlling weight, the ALJ must provide "good reasons" for doing so. 20 C.F.R. §404.1527(c)(2).

Dr. Winkelmann was Plaintiff's treating oncologist from November, 1999 until October 2010. In addition to clinical notes documenting his treatment of Plaintiff's chronic ITP, the medical records include opinion letters from Dr. Winkelmann. The one-page letters indicate that Plaintiff has been diagnosed with four chronic ailments, and repeatedly describe Plaintiff as "a chronically ill lady who requires weekly visits to my office," most recently for a treatment regimen of weekly N-Plate injections begun in

November 2009. (Tr. 553, 981). Dr. Winkelmann opines that Plaintiff's ITP, which he describes in clinical records as "asymptomatic," is likely to require frequent monitoring and treatment for years.[2] (Tr. 566). However, the opinion letters do not indicate that Plaintiff's chronic conditions are disabling. In addition to his opinion letters, Dr. Winkelmann completed a disability questionnaire in October 2008, in which he opined that Plaitniff is "unable to perform strenuous activity or any work which would place her at risk for bleeding." (Tr. 337). Thus, Dr. Winkelmann opined only that Plaintiff was precluded from certain jobs, not from all work. As the ALJ noted, "[n]o treating or examining source has indicated that the claimant is totally disabled from all work activity." (Tr. 24). Consistent with the ALJ's statement, Plaintiff's treating rheumatologist opined in October 2008 that she "is not currently disabled" on the basis of her "mild" and "easily controlled" arthritis. (Tr. 539).

Dr. Winkelmann also offers no opinions concerning Plaintiff's functional limitations. At Plaintiff's attorney's request, Dr. Winkelmann *partially* completed an RFC questionnaire on January 22, 2010. However, Dr. Winkelmann expressly *declined* to complete the portion of the RFC form that sought his opinions on Plaintiff's functional capacity to perform work-related activities, stating: "I can't assess – defer to PCP [primary care physician]." (Tr. 567). As the ALJ noted, "[t]here is no residual functional capacity assessment from the claimant's primary care physician on record," (Tr. 22).

---

[2]Plaintiff asserts that she suffered a stroke secondary to her ITP in January, 2010. (*See* Tr. 986). The cited document refers to a suspected transient ischemic attack ("TIA"), commonly referred to as a "mini-stroke." Citing earlier records of a similar suspected TIA event in October 2009, the ALJ found no evidence of a stroke at that time. (*See* Tr. 18, 709-711, 715-718, 994-997). Regardless of whether Plaintiff did or did not suffer a "stroke" in January 2010, she offers no evidence of any permanent limitations resulting from that event; instead, her transient symptoms appear to have resolved without lasting effect.

9

Given that neither Dr. Winkelmann nor any other treating physician offered any opinions at all concerning the details of any functional limitations,[3] the undersigned finds no error in the ALJ's analysis of Dr. Winkelmann's limited opinions. Dr. Winkelmann describes Plaintiff as a "chronically ill lady" – an assessment with which the ALJ did not disagree. The ALJ found that Plaintiff suffers from severe impairments including but not limited to ITP, a history of Thymoma, chronic anemia (which the ALJ found to be more severe than did Dr. Winkelmann), and chronic chest pain. However, a diagnosis, standing alone, offers little evidence of a claimant's functional limitations. *See Henderson v. Apfel*, 142 F.Supp.2d 943, 945 (W.D. Tenn. 2001)(holding that it is a claimant's functional limitations, rather than his or her diagnosis, that is most determinative).

Because no treating physician offered specific opinions concerning Plaintiff's functional limitations, the ALJ reasonably relied upon the medical evidence as a whole to determine Plaintiff's RFC, including negative diagnostic imaging results in 2008 and 2009 (Tr. 21-22), medical treatment notes and records from Plaintiff's physical therapy, and a physical RFC dated September 12, 2008 from a consulting physician, (Tr. 23, 471-479, 551). Plaintiff offers a conclusory argument that the ALJ should not have relied upon the consulting physician's opinion because it was "based on a cursory review of the medical records and there is no evidence..that he examined [Plaintiff]." (Doc. 10 at 6). However, "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or

---

[3]Plaintiff notes that on June 6, 2006 (more than two years prior to the date of Dr. Winkelmann's opinions), another oncology physician opined that Plaintiff's "functional abilities are very limited." (Tr. 443). However, that single opinion was exceptionally vague, brief, and unsupported, being limited to a single conclusory sentence.

10

examining sources." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)). In this case, the Court finds no error because it is clear that the ALJ examined the record as a whole. The ALJ noted that there was "no new and material evidence that would reduce the exertional portion of the residual functional capacity from my previous decision," and that, to the contrary, the evidence on the whole showed that Plaintiff "has improved." (Tr. 23).

### b. Side Effects of Treatment and Pain Level

Plaintiff cites her own testimony, concerning the side effects of her treatment regimen and her chronic pain, to argue that the ALJ should have found her to be so functionally limited as to be precluded from all work. A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's

testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Plaintiff does not directly challenge the ALJ's credibility findings, which are well-supported in the record. The ALJ found that Plaintiff was only "partially" credible, and that her subjective reports of disabling symptoms, including extreme side effects and pain, were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 23).

Rather than attacking the ALJ's credibility assessment directly, Plaintiff instead relies upon Dr. Winkelmann's medical records to support her complaints that both the side effects of her ongoing treatment and her pain level are disabling. Plaintiff testified at the hearing that her current regimen of weekly N-Plate injections leave her so fatigued that she needed to lie down for three days. (Tr. 23). With respect to Plaintiff's complaints of disabling side effects, however, the ALJ pointed out that Plaintiff's reports of extreme fatigue were "inconsistent with Dr. Winkelman's [sic] notes from November 25, 2009 to February 18, 2010, which show no significant complaints of side effects." (Tr. 23). It is true that Dr. Winkelmann listed side effects from the N-Plate injections as including: "[h]eadache, fatigue, dizziness, nausea, diarrhea, arthralgia." (Tr. 566). Yet, despite some evidence of side effects from February through April 2010, other records indicated that Plaintiff's side effects were mild and resolved over time. (*See e.g.*, Tr. 23; Tr. 1192-1193). Despite a handful of references to "nonspecific fatigue," (*see id.*), no physician documented the type of extreme and disabling fatigue to which Plaintiff testified. As the ALJ noted, it seems unlikely that Dr. Winkelmann would fail to document the type of debilitating fatigue to which Plaintiff testified, when he

documented much more benign complaints of headaches, insomnia, and paresthesia. (*Contrast, e.g.*, Tr. 1176, report that patient "feels fine" and "continues to have good response to N-Plate"; Tr. 1178, report that Plaintiff has "no new symptoms of any kind."). *Accord Payne-Hoppe v. Comm'r of Soc. Sec.*, 2012 WL 395472 at *14 (R&R filed Feb. 7, 2012, adopted March 5, 2012, upholding ALJ's credibility finding, where "[d]espite plaintiff's complaints of debilitating fatigue, the medical records reflect that after Soliris injections were started, plaintiff consistently had no complaints of fatigue on her regular medical visits."). Thus, substantial evidence supports the ALJ's decision to discount Plaintiff's subjective complaints of disabling fatigue.

Plaintiff turns again to Dr. Winkelmann's limited RFC opinion to support her subjective complaint of disabling pain. On the RFC questionnaire, Dr. Winkelmann describes Plaintiff as experiencing "frequent and debilitating" chest pain, "related to respiration and movement." (Tr. 565). However, when asked to identify objective signs of that pain, he identifies only "tenderness." (Tr. 566). The ALJ discounted the severity of Plaintiff's asserted pain as in itself disabling, based in part upon the lack of referral "to a pain management clinic" and the fact that Plaintiff had never undergone "any type of pain injections or undergone any significantly invasive or burdensome treatments for pain." (Tr. 23). While not denying that Plaintiff experiences pain, the ALJ emphasized the lack of objective evidence to support Plaintiff's reported level of pain:

> The etiology of this pain is unclear. It is believed that this pain is residual from the claimant's surgery and radiation, which could cause scarring. But there is no objective evidence of this. Just about all of the claimant's clinical signs are normal, showing no limitation of function from the claimant's chest pains. There is no substantial evidence of any coronary artery disease.

(Tr. 24).

13

There is no question that pain alone, if the result of a medical impairment, may be severe enough in some cases to constitute disability.  *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981).  However, aside from Plaintiff's testimony, no treating or consulting medical source has ever opined that Plaintiff's chest pain in this case is so severe that it precludes her from full-time work.  Substantial evidence supports the ALJ's determination that Plaintiff's allegation that she experiences pain so severe that it is disabling is not credible.

Although Dr. Winkelmann checked a box on the RFC form indicating that Plaintiff's pain would "often" interfere with attention and concentration, (Tr. 566), the ALJ gave that opinion "[r]educed weight" based on the lack of support for the opinion in the medical records as a whole.  (Tr. 23-24).  Defendant points out, and Plaintiff does not dispute, that none of Dr. Winkelmann's office notes contain any findings or complaints related to Plaintiff's concentration or attention.  In any event, the ALJ's mental RFC finding arguably accommodates Dr. Winkelmann's limited opinion, to the extent that the ALJ determined that Plaintiff had moderate limitations in her concentration, persistence or pace, and was limited to "routine, static and predictable work" as well as work that required no "strict production quotas or fast-paced performance."  (Tr. 19-20).  Thus, while there is no doubt that Plaintiff experiences chronic chest pain, which the ALJ recognized as a "severe" impairment, substantial evidence in the record as a whole supports the ALJ's conclusion that Plaintiff's level of pain is not disabling.

### c. Weekly N-Plate Injections

As discussed above, much of Plaintiff's Statement of Errors focuses on her current treatment regimen for her chronic ITP - weekly N-Plate injections.  Essentially

arguing that her cure is worse than her disease, at least for purposes of the disability analysis, Plaintiff contends that she is unable to sustain full-time work because her weekly injections would require her to miss too much work.  Plaintiff testified that her treatment requires her to spend approximately 2 hours at the doctor's office each week, including the time it takes for her lab work and injection. (Tr. 64-65).  The ALJ did not discount Plaintiff's testimony on that issue, but instead determined that Plaintiff was not disabled because it was "pure speculation that the claimant could not arrange to have these injections at a time and place that did not interfere with working full-time." (Tr. 23).  Aside from Plaintiff's own testimony, the ME testified that the 2-hour time frame was a reasonable estimate, but opined that she could "get the shot on Friday," arguably before or after work. (Tr. 65, 76).

Plaintiff argues on appeal that it was error for the VE to assume that she could arrange her work schedule around her 2-hour weekly appointments.  Although Plaintiff cites no relevant legal authority for her position, the Court's own review of relevant case law reveals the issue to be relatively close.  On the one hand, the Plaintiff retains the burden to show that she is disabled, through Step 4 of the sequential analysis, involving the calculation of her residual functional capacity.  Restrictions on a claimant's ability to sustain full-time work, due to the frequency of medical appointments, would fall within the analysis of her RFC.  On the other hand, the burden shifts to the Commissioner at Step 5 of the sequential analysis to show that a significant number of jobs remain in the national economy that an individual with the Plaintiff's limitations can continue to perform on a full-time basis.

In two recent cases involving similar issues, the same district judge assigned to this case reached differing results, based upon the unique factual circumstances of each case. First, in *Robinson v. Astrue,* Civil Case No. 1:10-cv-689-SKB-SSB, 2011 WL 6217436 (Dec. 14, 2011), Judge Beckwith adopted the Report and Recommendation of the undersigned, affirming the non-disability finding of the Commissioner, even though Plaintiff argued that she would miss two to three days of work each month for frequent medical treatments for multiple sclerosis (MS). In *Robinson*, medical records demonstrated a varied schedule of treatment, including some months where treatment was infrequent or non-existent, and other months where treatment was for arguably elective conditions, such as thinning hair, or other conditions unrelated to MS. The ALJ also theorized that Plaintiff "might have been able to schedule" some treatment, such as physical therapy appointments, during non-work hours. *Id.* at *4. In the R&R, the undersigned observed that there were "no medical opinions about the likelihood of absenteeism caused by Plaintiff's impairments" and/or her "need for treatment during working hours." *Id.* at *5. Keeping the onus on Plaintiff to prove her disability, Judge Beckwith agreed that "the ALJ's decision that Plaintiff's need for treatment would not subject her to excessive absenteeism was supported by substantial evidence," since Plaintiff's physical and occupational therapy sessions typically lasted only about an hour, which would not require missing a full day of work. *Id.* at *6-7.

A different result was obtained in *Payne-Hoppe v. Comm'r of Soc. Sec.*, Civil Case No. 1:11-cv-97-SSB-KLL, 2012 WL 395472 (S.D. Ohio Feb. 7, 2012). In that case, a claimant also argued that she could not work due to the amount of time required

16

for bi-weekly injections for a chronic condition. In addition to the plaintiff's own testimony, her physician opined that she was required to spend "several hours in our clinic for each dose" of injections. *Id.* at *4. The ALJ followed up with clinic staff, who informed the ALJ that the treatment "takes about 35 minutes and at the most one hour." *Id.* at *8. Although the plaintiff testified that she was required to stay at the clinic for a significant period of time before and after each treatment, typically arriving at 1:00 p.m. and not leaving before 4:30 p.m., *see id.* at *16, the ALJ discounted that testimony, and surmised that she could get a job working second or third shift. The ALJ found a significant number of jobs existed that plaintiff could perform, even though the VE did not specify how many were available as second or third shift work.

In an R&R subsequently adopted by Judge Beckwith, Magistrate Judge Litkovitz recommended reversal and remand, based in part upon the ALJ's misinterpretation of the plaintiff's testimony, and failure to account for the physician's corroborating report that plaintiff must spend "several hours" at the clinic. *Id.* at *17. Magistrate Judge Litkovitz reasoned that in light of VE testimony that plaintiff's "unscheduled" absences could not exceed one to one and a half days per month, the ALJ should have inquired "whether a 'scheduled' absence of the same length would preclude competitive employment, or whether employers of the unskilled, sedentary jobs listed by the VE would tolerate the number of absences plaintiff would experience due to her regularly scheduled Solaris infusion treatments." *Id.* Judge Litkovitz also noted that the VE's testimony "strongly implies that plaintiff's ability to engage in competitive employment depends on a work schedule that does not overlap her medical appointments." *Id.* However, the ALJ's finding that Plaintiff could work a second shift job, from 3 p.m. to 11

17

p.m. "depends on the amount of time required for her infusion treatments." *Id.* at *18. The ALJ's decision was not supported by substantial evidence in the record, in light of evidence that treatments lasted from 1-4:30 p.m., and because the record contained no evidence at all of the number of available third shift jobs. Presumably because it is the Commissioner's burden at "step 5" of the analysis to show that a significant number of jobs exist, the Court found it inappropriate to "assume" that fact. *Id.*

The facts presented in the instant case fall somewhere between those in *Robinson* and those in *Payne-Hoppe*. As in *Robinson*, Plaintiff points to "no medical opinions about the likelihood of absenteeism caused by Plaintiff's impairments." In fact, the only evidence on the issue supported the ALJ's determination, as the medical expert at the hearing opined that Plaintiff should be able to arrange her schedule to receive her injections during non-work hours. It remains Plaintiff's burden to show that the frequency of her treatments is a limitation that should have been accounted for at Step 4 of the sequential analysis.

On the other hand, as in *Payne-Hoppe*, Plaintiff has offered uncontested evidence - through her own testimony and that of her treating physician, Dr. Winkelmann - that her current treatment regimen requires two hours each Friday.[4] Notwithstanding the ME's hypthesis, it is not clear from the record whether those treatments generally can be arranged during non-work hours. Also missing from the record, at Step 5 of the sequential analysis, is any vocational expert testimony as to whether an employer would permit weekly absences for treatment given the type of jobs that Plaintiff could perform, or alternatively, whether a significant number of jobs might

---

[4]The record reflects that Plaintiff began this regimen in November 2009. At least arguably, no further fact-finding would be required concerning the period prior to that date.

18

be available on different shifts, so that Plaintiff could sustain full-time work without having to be absent from work. While the issue is close, the undersigned concludes that overall, remand for further fact-finding is required based upon the absence of substantial evidence to support a non-disability finding.

### III. Conclusion and Recommendation

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175.

For the reasons discussed, the ALJ committed error by failing to adequately develop the record concerning the frequency of Plaintiff's treatment regimen. Therefore, **IT IS RECOMMENDED THAT** the Commissioner's decision to deny Plaintiff SSI benefits be **REVERSED** and this case be closed. On remand, the ALJ should further develop the record to determine: (1) whether Plaintiff can obtain her weekly injections during non-work hours, such that work and treatment times would not overlap; or if not, (2) whether likely employers would permit Plaintiff's scheduled absences for treatment.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VANESSA MILLER,                                      Case No. 1:12-cv-16

    Plaintiff,                                    Beckwith, J.
                                                   Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).